RECEIVED

FEB - 8 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| HUBERT P. VIDRINE, JR., ET AL. | CASE NO. 6:07-CV-1204 |
| VERSUS | JUDGE DOHERTY |
| UNITED STATES OF AMERICA | MAGISTRATE JUDGE KAY |

## RULING

This matter involves a claim for malicious prosecution, brought by plaintiffs Hubert P. Vidrine, Jr. and Tammy J. Vidrine against defendant, the United States of America, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*. The claims are based on the actions of investigative and law enforcement officers of the U.S. Government, alleged to have occurred while acting in the scope of their employment. Specifically, plaintiffs claim on September 5, 1996, agents of the Federal Bureau of Investigation, the Environmental Protection Agency, the United States Marshal Service, the United States Coast Guard, and the Louisiana State Police executed a search warrant on Canal Refining Company, a facility for which Mr. Vidrine acted as manager. On December 14, 1999, Mr. Vidrine was indicted on one count of knowingly storing hazardous waste on the property of Canal Refining Company, in violation of 42 U.S.C. § 6928(d)(2). Shortly thereafter, Mr. Vidrine was taken into custody and subsequently released on bond. On September 17, 2003, the Government filed a motion to voluntarily dismiss the indictment against Mr. Vidrine, stating, "Developments in this matter since the Indictment have revealed facts and circumstances which, in the interest of justice, warrant dismissal of the Indictment." See *U.S. v. Trinity Marine Baton Rouge, Inc., et al*, W.D.La. (J. Melançon), Docket No. 6:99-cr-60053, Document No. 157.

The motion was granted by Judge Tucker Melançon on September 18, 2003. *Id.* at Doc. No. 158. On September 23, 2007, plaintiffs filed a malicious prosecution claim based upon the foregoing events, which is now pending before this Court.[1]

On September 15, 2009, a hearing was held in open court in this matter to address several motions filed by the parties. At the hearing, the Court ruled on two appeals of a discovery ruling issued by the Magistrate Judge, affirming the discovery ruling in part and remanding in part. [*See* Doc. Nos. 128, 130; 163, pp. 4-29] More specifically, this Court affirmed the portion of the Magistrate Judge's Ruling which required defendant to produce certain discovery concerning matters or events post-dating the grand jury's return on indictment. At the hearing, after the court ruled on the appeals, defendant clarified and expanded upon an argument made in various motions filed in this matter - more specifically, defendant argued discovery to plaintiffs should be limited solely to matters which occurred pre-indictment, as exclusive responsibility and control for the prosecution passed to the prosecutor once plaintiff was indicted by the grand jury. Further, because the FTCA does not authorize lawsuits for intentional torts based upon the actions of government prosecutors, defendant argued plaintiff cannot support a claim for malicious prosecution with facts that arose post-indictment. [Doc. 163, pp. 40-49]

In light of the foregoing argument, the Court ordered the parties to file pocket briefs, specifically (and exclusively) addressing the following legal issue: As a matter of law, does control over a federal, criminal prosecution vest exclusively with the prosecutor once there is a return on indictment, such that a plaintiff who subsequently files a civil claim for malicious *continuation* of a prosecution (premised upon the post-indictment actions of law enforcement agents) would have

---

[1]Plaintiffs' Complaint sought damages for various other torts in addition to malicious prosecution, however, most (if not all) of those claims have now been dismissed.

2

no cause of action against law enforcement agents for their post-indictment activities, because, as a matter of law, those law enforcement agents were divested of all control over the prosecution post-indictment?[2] [Id. at 49-54] Additionally, the Court suspended its order (entered at the conclusion of its Ruling on the appeals) requiring defendant to produce post-indictment discovery, until the Court had opportunity to address defendant's argument raised at the hearing and further addressed in the pocket briefs. This Court has completed its review of the parties' briefs, as well as <u>all</u> cases cited therein, the Court has conducted additional, independent research, and now finds, for the reasons that follow, the answer to the foregoing question is largely dependent upon the specific facts of the litigation, and, in this matter, the issue at hand must be decided at a trial on the merits. In other words, the Court finds this is not purely a legal issue which may decided on the briefs, as defendant essentially argues. Accordingly, this Court's order requiring defendant to produce post-indictment discovery is hereby REINSTATED, and defendant must produce the discovery within fifteen days of issuance of this Ruling. [Doc. 163, p.37]

## Applicable Law

"As the sovereign, the United States is immune from suit unless, and only to the extent that, it has consented to be sued." *Truman v. United States*, 26 F.3d 592, 594 (5th Cir.1994)(citing *Fed.*

---

[2] It is important to note all parties appear to agree to the following: pursuant to the FTCA, the substantive law applicable to plaintiff's claim for malicious prosecution in this matter is that of the State of Louisiana; Louisiana law recognizes the tort of malicious *continuation* of a prosecution (in addition to the tort of malicious *commencement* of a prosecution); the United States has not waived sovereign immunity for claims of malicious prosecution premised upon the actions of federal prosecutors; the United States has waived sovereign immunity for claims of malicious prosecution premised upon the actions of law enforcement agents; pursuant to the FTCA, a plaintiff may bring a claim for malicious commencement of a prosecution premised upon the pre-indictment actions of law enforcement agents. Additionally, the Court notes Louisiana is among the few states in which the tort of "malicious prosecution" encompasses the commencement *or continuation* of a prosecution, whereas the majority of states recognize claims for malicious prosecution premised solely upon the *commencement* of a prosecution.

*Deposit Ins. Corp. v. Meyer*, 510 U.S. 471 (1994)). One of the vehicles by which the United States has waived its sovereign immunity is the Federal Torts Claims Act. Williamson v. U.S. Dept. of Agriculture, 815 F.2d 368, 374 (5th Cir. 1987). Through the FTCA, the United States has consented to suits "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also* Cleveland ex rel. Cleveland v. U.S., 457 F.3d 397, 403 (5th Cir. 2006)("State substantive law applies in suits brought under the FTCA, . . . and we apply the law of the state in which the suit arises . . . .").

One notable exception to the FTCA is the "intentional tort" exception, which excludes from the FTCA "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). However, that same provision then waives sovereign immunity for certain intentional torts, including malicious prosecution, committed by "investigative or law enforcement officers of the United States Government." *Id.*; *see also Castro v. U.S.*, 560 F.3d 381, 386 (5th Cir. 2009). "'[I]nvestigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violation of Federal law." *Id.* "[P]rosecuting attorneys are not 'law enforcement officers' within the meaning of this section." *Vander Zee v. Reno*, 100 F.3d 952, *4, n.2 (5th Cir. 1996)(unpublished)(citing *Bernard v. United States*, 25 F.3d 98, 104 (2nd Cir. 1994); *Ware v. United States*, 838 F.Supp. 1561, 1563-64 (M.D.Fla. 1993); *Dirienzo v. United States*, 690 F.Supp. 1149,

4

1158, n.8 (D.Conn. 1988)).

Louisiana recognizes a civil cause of action, "based on fault under C.C. 2315, in favor of one 'whose liberty has been interfered with in an unwarranted manner.'" Jones v. Soileau, 448 So.2d 1268, 1271 (La. 1984). "Like any other delict under C.C. 2315, such an 'interference' must be based on fault of the defendant which causes the damage complained of in order for the plaintiff to recover." *Id.* Pursuant to Louisiana law, the elements of a malicious prosecution claim are:

> (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.

*Id.*

## Analysis

1. **"Vidrine cannot base his FTCA malicious-prosecution claim on the acts/omissions of federal prosecutors." [Doc. 164, p.1]**

Defendant's first argument is as follows: "Vidrine cannot base his FTCA malicious-prosecution claim on the acts/omissions of federal prosecutors." As plaintiffs and the Court have previously indicated they agree this is an accurate statement of law, the Court declines to address that argument at this time. [*See e.g.*, Doc. Nos. 163; 168, pp. 6-7]

2. **"As a matter of federal law, control over the criminal investigation/prosecution of Vidrine vested with the U.S. Attorney after return on grand-jury indictment." [Doc. 164, p.3]**

Defendant's second argument states the following: "As a matter of federal law, control over the criminal investigation/prosecution of Vidrine vested with the U.S. Attorney after return on grand-jury indictment." [Doc. 164, p.3] In support of this assertion, defendant first cites *Bernard v. U.S.*, a Second Circuit case which states, "Once the grand jury indicted Bernard, control of the

prosecution passed to the prosecutor and was no longer within the agent's authority." *Bernard*, 25 F.3d 98, 104 (2nd Cir. 1994).[3] *Bernard* relied upon a case from the District of Connecticut for this proposition, namely *Dirienzo v. U.S.*, 690 F.Supp. 1149, 1158 (D.Conn. 1988). Defendant, noting *Bernard* relied upon *Dirienzo*, then states, "*Dirienzo* ... held in broad terms that '[a]fter [criminal defendant's] arrest, the prosecution was under the control not of the FBI agents but of the United States Attorney....'" [Id. at 4] However, defendant omits the next statement from the *Dirienzo* opinion, which reads:

> In order for there to be liability for malicious *continuation* of the prosecution once control has passed into the hands of the prosecuting attorney the defendant (i.e., the FBI agents) must be shown to have taken an active part in the proceedings:
>
>> [T]he defendant must take an active part in [the] prosecution after learning that there is no probable cause for believing the accused guilty. It is not enough that he appears as a witness against the accused either under subpoena or voluntarily, and thereby aids in the prosecution of the charges which he knows to be groundless. His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution. The fact that he initiated the proceedings does not make him liable [for continuation of the prosecution] merely because he intentionally refrains from informing a public prosecutor, into whose control the prosecution has passed, of subsequently discovered facts that clearly indicate the innocence of the accused, even though they have the effect of convincing him that this is the fact.
>
> Restatement (2d) Torts, § 655, comment c (1977). *See, e.g., Whittaker v. Duke*, 473 F.Supp. 908, 911 (S.D.N.Y.1979) (applying New Jersey law).

*Dirienzo* at 1158 (emphasis in original). Thus, the case upon which the government relies for its position - that *as a matter of law*, there can be no claim for malicious continuation of a prosecution

---

[3] At the hearing held on September 15, 2009, the Court specifically admonished all counsel to discontinue their reliance upon non-binding jurisprudence, particularly on those topics where applicable and binding jurisprudence is available. [Doc. 163, pp. 28, 29] As will become apparent, the government chose not to heed this Court's warning.

premised upon actions of law enforcement agents occurring post-indictment, as sole and exclusive control over the prosecution vests exclusively with the prosecutor upon return of the indictment - contains a very important caveat which undercuts the government's argument, yet the government has neglected to mention this nuance in its briefing: namely, if a law enforcement agent is shown to have "taken an active part in the proceedings" post-indictment, the United States may be liable for malicious *continuation* of a prosecution.[4] *Id.*

Defendant next cites a case from the Southern District of New York, *Davis v. U.S.*, 2004 WL 324880, *6 (S.D.N.Y.), for the same proposition. [Doc. 164, p.4 ("Relying on *Bernard, supra,* another district court broadly held that '[a] malicious prosecution claim is barred by the FTCA when 'control of the prosecution pass[es] to the prosecutor.'")] However, defendant, again, omits the next statement from *Davis*, which reads:

> The proceedings against Davis began with a grand jury indictment, rather than the filing of a criminal complaint by a federal law enforcement officer. Because Davis' prosecution was derivative of the Giampa prosecution, in which federal prosecutors were already involved, federal prosecutors controlled Davis' prosecution from the outset. The malicious prosecution claim thus cannot be sustained because it was federal prosecutors, not federal law enforcement officers who instituted the prosecution. *See id.* [*i.e. Bernard, quoting Dirienzo*] ("Because the FTCA does not authorize suits for intentional torts based upon the actions of Government prosecutors, plaintiff cannot support his malicious prosecution claim with facts that arose after his indictment."). Plaintiff's malicious prosecution claim is thus barred by the intentional tort exception of the FTCA and is accordingly, dismissed as against the United States.

*Davis* at *6. Notwithstanding the fact the *Davis* opinion is not binding upon this Court, the language quoted above demonstrates control of the prosecution in *Davis* was an issue of fact ("[b]ecause

---

[4]At the hearing held on September 15, 2009, the Court specifically advised counsel, "Be certain that if you cite me to a case [in your pocket briefs] and that there is a nuance that you note it. If you overstate it or you overreach it, you will lose credibility with the Court vis-a-vis your argument ...." [Doc. 163, pp. 53-4] The government obviously did not heed the Court's warning.

7

Davis' prosecution was derivative of the Giampa prosecution, in which federal prosecutors were already involved, federal prosecutors controlled Davis' prosecution from the outset"), rather than a pure issue of law, as the government appears to suggest.

Finally, in support of this particular argument, the government states:

> Lest the Court conclude that the above-stated holdings somehow flow from the elements of New York state law, a District Court in North Carolina also reached the same conclusion in analyzing a FTCA malicious-prosecution case based on the elements of Texas state tort law. *See Harrison v. United States*, 2000 WL 33965066, *3 (E.D.N.C. Aug. 15, 2000) ("Control over the prosecution passed to Government attorneys after Plaintiff was indicted, and attorneys may not be sued under the FTCA....").

[Doc. 164, pp. 4-5] However, as discussed at the hearing held September 15, 2009, unlike Louisiana and New York, Texas does not allow claims for malicious *continuation* of a prosecution, but only for malicious *commencement* of a prosecution. *Compare Jones* at 1271("the elements of a malicious prosecution action [under Louisiana law] are: (1) the commencement or continuance of an original criminal or civil judicial proceeding ...."), *and Bernard* at 104 ("The elements of a malicious prosecution claim under New York law are: (1) the defendant commenced or continued a criminal proceeding against plaintiff ...."), *with Brown v. U.S.*, 653 F.2d 196, 198 (5th Cir. 1981)("to recover damages for malicious prosecution in Texas, the plaintiff must prove seven elements: (1) a criminal action was commenced against him ...."). Additionally, the Court notes the language from *Harrison* upon which defendant relies is found in that portion of the opinion addressing *pro se* plaintiff's claim for abuse of process, rather than the portion addressing malicious prosecution.

3. **"The 'continuation' element in Louisiana malicious-prosecution law does not affect the analysis." [Doc. 164, p.5]**

Defendant's third and final argument states as follows: "The 'continuation' element in Louisiana malicious-prosecution law does not affect the analysis." [Doc. 164, p.5] Defendant

8

expounds, "a cause of action for malicious prosecution under Louisiana law requires the initiation of criminal charges with malice and without probable cause and the key point of inquiry is the circumstances existing at the time the charge was originally instituted."[5] [Id.] Defendant continues, "Assuming only for the sake of argument that Louisiana law would attach liability for continuation of a criminal proceeding with malice and without probable cause, this conclusion still would not alter the analysis *supra* concerning the immunity of the U.S. Attorney's Office, post-indictment control over the investigation and prosecution of Vidrine, and, finally, relevant discovery in this case." [Id.]

In support of its argument, defendant first cites *Touchton v. Kroger*, 512 So.2d 520 (La. 3rd Cir. 1987), stating:

> [T]he *Touchton* court articulated a similar principle for Louisiana state law:
>
>> Once prosecution was initiated against plaintiff ... the police officers had no control over the dismissal of the charges against plaintiff. At that stage in the proceeding, only the prosecuting attorney had discretion to dismiss the charges. Therefore, the police officers could not have been a legal cause of the continuation of the prosecution....

[Doc. 164, p.6 (quoting *Touchton* at 524] First, the Court notes this portion of the *Touchton* opinion addressed the second element of a claim for malicious prosecution - namely, whether or not the law enforcement defendants were the legal cause of the original judicial proceeding against the plaintiff. This portion of *Touchton* was not directed toward the argument currently before this Court - namely, whether or not control over a prosecution passes exclusively to the prosecutor once an indictment

---

[5] No authority is provided for this purported statement of law, unless one accepts (at face value) defendant's statement that "The United States has previously relied on caselaw that has held a cause of action for malicious prosecution under Louisiana law requires the initiation of criminal charges with malice and without probable cause and the key point of inquiry is the circumstances existing at the time the charge was originally instituted." However, as this matter currently contains 172 docket entries (which the Court would have to ferret through to verify the accuracy of defendant's statement), and because accuracy and specificity regarding caselaw appears to be an ongoing issue in the pending briefing as well as in this case overall, the Court declines, at this time, to accept this purported statement of law without proper legal authority.

9

is returned. Moreover, defendant neglects to mention the portion of *Touchton* it has quoted is found *after* the *Touchton* court sets forth specific facts showing that law enforcement officers in that matter had no responsibility for the commencement or continuation of the prosecution, nor even for issuance of the arrest warrant.[6] The Court thus finds defendant's reliance upon *Touchton* in support

---

[6]The pertinent facts of *Touchton* are as follows:

On January 30th or 31st, 1984, plaintiff's checkbook for his personal checking account with Guaranty Bank and Trust Company in Alexandria, Louisiana, was stolen from his car; On January 31, 1984, two of the stolen checks were forged and made payable to "Kroger," each check in the amount of $30.00; the checks were negotiated to the Kroger Company store located in Pineville, Louisiana; since plaintiff had notified Guaranty Bank that the checks had been stolen, the bank refused payment after Kroger deposited the checks; ... after its failure to collect the amount of the checks from plaintiff, the manager of the Pineville Kroger store, Robert Borders, executed an affidavit before Lynda M. Lymberis, Clerk of the Pineville City Court, stating that plaintiff had issued a worthless check to Kroger drawn on the Guaranty Bank in the amount of $30.00 for merchandise received at the time the check was issued and attached the check numbered 1402 to the affidavit; Ms. Lymberis the manager of the Kroger store executed an affidavit before the Clerk of the Pineville City Court "stating that plaintiff had issued a worthless check to Kroger ... for merchandise received at the time the check was issued and attached the check numbered 1402 to the affidavit"; thereafter, the Clerk "typed out a warrant for plaintiff's arrest for issuing a worthless check ... and presented the warrant, ... affidavit and the forged check to Judge F. Jean Pharis of the Pineville City Court, who signed the warrant for plaintiff's arrest; the Clerk of the Pineville City Court then delivered the warrant, affidavit, and check to F.A. Stalter, Assistant Chief of Police, who delivered the documents to Police Officer Bobbie Trammell with instructions to have plaintiff arrested; neither officer examined the check attached to the affidavit or investigated the charges alleged; on March 19, 1984 Officer Trammell called the principal's office at Peabody Magnet School in Alexandria, Louisiana, where plaintiff was employed as a computer science teacher; Officer Trammell left a message for plaintiff to call her; after plaintiff failed to immediately return the call, Officer Trammell called the principal's office again, telling the office employee to deliver a message to plaintiff stating that she was a Pineville police officer and that if he did not return her call she would get the Alexandria police department to arrest him; when plaintiff returned Officer Trammell's call she informed him that she had a warrant for his arrest; plaintiff then reported to the Pineville Police Station where Lt. Russell Murdock placed him under arrest and gave him a summons to appear in court on April 11, 1984; plaintiff told the arresting officers that the check had been forged; on March 20, 1984, plaintiff's attorney met with Assistant Chief of Police F.A. Stalter informing him of the theft of the checks and the subsequent forgery; William J. Bryant, Vice-President of Guaranty Bank wrote a letter to Mr. Stalter on March 21, 1984, verifying that the checks were stolen and that the $30.00 check was returned because the signature was not like that on file; on April 2, 1984, plaintiff's attorney filed a motion to quash the charge, setting forth the

10

of its argument to be, at best, a poor reading of the case.

After citing *Touchton*, defendant string cites *Tabora v. City of Kenner*, 650 So.2d 319, 324 (La. 5th Cir. 1995), noting "*accord*." Again, as in *Touchton*, the court's conclusion in *Tabora* was highly fact specific. There, the court found law enforcement officers established, as a matter of *fact*, that after plaintiff's arrest, they had nothing further to do with the continuance of the prosecution, and therefore could not be liable for malicious continuation of a prosecution. Again, like *Touchton*, a fair reading of *Tabora* does not lead one to the conclusion that, pursuant to Louisiana law, control over a prosecution passes exclusively to the prosecutor (as a matter of law) once an indictment is returned.

The remainder of defendant's citations, with the exception of *Ware*, are merely repetitious of arguments previously raised and previously addressed by this Court and will therefore not be addressed in this Ruling. Defendant's final citation is to *Ware*, a case issuing from the Middle District of Florida. *Ware v. United States*, 971 F.Supp. 1442, 1462 (M.D.Fl. 1997). Defendant

---

> above alleged facts, and delivered the motion to Assistant Chief Stalter with copies of the documents going to Henry H. Lemoine, Jr., prosecuting attorney for the City of Pineville; plaintiff appeared in Pineville City Court for arraignment and entered a plea of not guilty; plaintiff was brought to trial on the charges on May 9, 1984, after which Judge Pharis granted the motion to quash and dismissed the charges against him.

*Id.* at 522-23.

The trial court granted a peremptory exception of no cause of action filed by the various law enforcement officers involved, the City of Pineville and its insurer, and dismissed plaintiff's malicious prosecution claim against those defendants. On appeal, the Third Circuit affirmed, finding:

> We conclude that these facts are not sufficient to satisfy the second element of the Jones test; that being that the present defendants be the legal cause of the original judicial proceeding against the plaintiff.

*Id.* at 524.

argues, "In *Ware* ... the Court held that a cause of action for malicious continuation of suit requires plaintiff to prove the absence of probable cause and presence of malice at *all* stages of the criminal proceedings, from commencement of the suit onward." [Doc. 164, p.7 (emphasis in original)] Defendant further argues, "As the *Ware* court explained, '[i]nherent in the phrase malicious *continuation* of prosecution is the notion that probable cause must be lacking at all stages of the prosecution from indictment to acquittal for the present plaintiff to prevail.'" [Id. (quoting *Ware* at 1462)(emphasis in original)] However, this Court notes the *Ware* decision cites no authority in support of its statement of law (other than "inherent in the phrase ... is the notion that ..."). Additionally, the *Ware* opinion relies upon the law of the State of Florida. *Ware* at 1460-61. Moreover, as defendant has cited this Court to the *Ware* decision, it would seem important to note an earlier ruling by the same court in the same case, which the government has neglected to address (but was reviewed by this Court during its independent research). *See Ware v. U.S.*, 838 F.Supp. 1561, 1563 -1564 (M.D.Fla.1993).

In the earlier *Ware* decision, defendant argued (just as defendant argues in this matter), "after the return of the grand jury's indictment, prosecution was under the control not of the FBI, but of the United States Attorney's Office for the Middle District of Florida." *Id.* at 1564. Defendant further argued:

> [W]ith return of the indictment, there was full probable cause for the arrest of the defendant, and thereafter, the prosecution was under the control not of the FBI but of the United States Attorney for the Middle District of Florida, against whom any claim for malicious prosecution or false imprisonment is absolutely barred under the provisions of § 2680(h). Thus, Defendant contends that it is manifest that Plaintiff's complaint fails to state a cause of action against the United States for malicious prosecution, malicious continuation of prosecution or false imprisonment and, therefore, these claims must be dismissed.

*Id.* Nevertheless, the court ruled continued prosecution, after discovery of exculpatory facts by a

12

special agent of the FBI who was actively involved in the investigation and in formulating strategy for the prosecution's case, could be a basis of a claim for malicious *continuation* of prosecution under the Federal Tort Claims Act, **despite the fact that the grand jury indicted the plaintiff and there existed probable cause for the arrest**. *Id.* The court held a showing of probable cause for arrest did not insulate or immunize the special agent for his actions leading up to the suspect's wrongful conviction and imprisonment, where the agent was alleged to have "purposely withheld information relating to the fingerprint test results from Plaintiff at trial, even though it was relevant, exculpatory, and would have completely undermined the Government's theory that the Plaintiff was the 'money man' in a drug operation." *Id.* at 1563.[7]

---

[7]Of note, a similar argument has been made in this District without success. *See Burrell v. Adkins*, 2008 WL 130789 (W.D.La.) (J. Drell). In *Burrell*, plaintiffs brought a claim for malicious prosecution after the Louisiana Attorney General filed a dismissal of all charges against them. (Plaintiffs spent over thirteen years on death row prior to the dismissal of their charges.) *See Burrell v. Adkins*, 2007 WL 4699166, *1 (W.D.La.) (M.J. Kirk). Plaintiffs argued the District Attorney's Office intentionally prosecuted them for murder, regardless of their guilt or innocence, in order to save the sheriff embarrassment and to appease the public, and accordingly, both the prosecutors and law enforcement officers should be liable for malicious prosecution. The Magistrate Judge found in his Report and Recommendation:

> [T]he decision to prosecute Burrell and Graham was made by the prosecutors, not the Sheriff's office defendants. "The district attorney has entire charge and control of every criminal prosecution instituted ... in his district, and determines whom, when, and how he shall prosecute." La.C.Cr.P. art. 61. Therefore, the motion for summary judgment by the sheriff's office defendants should be granted on this issue.

*Id.* at 16. Upon review of the Report and Recommendation, the District Court stated as follows:

> The plaintiffs object to the recommendation that the state law malicious prosecution claims against the Sheriff Defendants be dismissed, on the grounds that the sheriff's office may be liable under Louisiana case law, citing *Miller v. East Baton Rouge Parish Sheriff's Dept.*, 511 So.2d 446 (La.1987) and *Jenkins v. Baldwin*, 801 So.2d 485 (La.App. 4 Cir.2001). ...
>
> ... Although the Louisiana Fourth Circuit Court of Appeal [in *Jenkins*] ultimately dismissed the malicious prosecution claim against the city, it did so on the basis that the plaintiff had failed to demonstrate malice, an essential element of the malicious prosecution claim. However, the opinion clearly assumes that the city **could** be liable,

In essence, the Court finds defendant's argument ("the continuation element in Louisiana malicious-prosecution law does not affect the analysis") to be inaccurate and overly broad as stated. In *Jones v. Soileau*, 448 So.2d 1268 (La. 1984), a grocery store customer brought a malicious prosecution action against a grocer for the grocer's prosecution of the customer on four counts of issuing worthless checks. (The customer had previously been convicted at trial of issuing worthless checks, but the conviction was overturned by the Louisiana Supreme Court, who found the statute forming the basis for conviction was inapplicable, because the transactions were in the nature of an open account.) In the malicious prosecution suit, the record of the criminal case was introduced into

---

> even though the district attorney's office was involved in the prosecution. This assumption seems to be well supported. See, e.g., *Walls v. State*, 670 So.2d 382 (La.App. 3 Cir.1996) (allowing a malicious prosecution claim to proceed against a sheriff even while dismissing a related claim against the district attorney based on the defense of absolute prosecutorial immunity). Thus, regardless of the district attorney's discretion over the handling of the prosecution, we must disagree with the report and recommendation's finding that the Sheriff Defendants cannot be liable for malicious prosecution.
>
> The defendants argue that even if the Sheriff Defendants *could* be liable, the district attorney's prosecution of the case breaks the chain of causation, citing, *inter alia*, *Winn v. City of Alexandria*, 685 So.2d 281 (La.App. 3 Cir.1996) and *Kennedy v. Sheriff of East Baton Rouge*, 935 So.2d 669 (La.2006). Contrarily, these cases do not help the defendants. ...

*Burrell*, 2008 WL 130789, *4-5 (emphasis in original); *see also Bedford v. City of Mandeville*, 226 F.3d 642, *2 (5th Cir. 2000)(unpublished)("The district court concluded that because the District Attorney holds all prosecutorial responsibility, no malicious prosecution claims can lie against a police officer .... This conclusion is not supported by the Louisiana case law."); *Parks v. Winnfield Life Ins. Co.*, 336 So.2d 1021, 1029 (La. 3rd Cir. 1976)("Defendants also argue that a malicious prosecution action cannot be maintained against them after an indictment has been returned against the plaintiff. There is no merit in this argument. By raising the issue of the grand jury indictment, defendants are simply attempting to prove that there was probable cause to institute the proceedings. A grand jury indictment is not conclusive evidence of probable cause and any presumption which may arise as a result of it can be rebutted by proof that the indictment was obtained by false testimony or by proof that defendants failed to make a full and complete statement of the facts to the grand jury. ... The issue of probable cause and the effect that a grand jury indictment may have upon it are to be determined at a trial on the merits."); *Knapper v. Connick*, 668 So.2d 465, 468 (La. 4th Cir. 1996), *rev'd on other grounds* ("Our courts have rejected a presumption of probable cause based upon indictment").

evidence, and the trial judge referred to the previous conviction, sentence and reversal in his reasons for judgment. The trial court ultimately found in favor of plaintiff. On appeal, the Third Circuit reversed, finding probable cause (the fourth element of a claim for malicious prosecution) existed in the criminal matter. Thereafter, the Louisiana Supreme Court reversed the appellate court's ruling, stating:

> The first three elements, the court of appeal found, are satisfied. *The court of appeal reversed the trial court with respect to probable cause because of certain evidentiary presumptions which are controlling in other states.* ...
>
> ... The crucial determination [for probable cause] is whether Soileau had an honest and reasonable belief in the guilt of Jones at the time he pressed charges. *Sandoz v. Veazie*, 106 La. 202, 30 So. 767 (1901). **In applying these principles, a court may take into account events subsequent to the filing of the criminal charge.** These are, however, simply additional pieces of evidence which comprise the entirety of the circumstances which it is the court's duty to review.

*Jones* at 1271-72 (some citations omitted; emphasis added; footnotes omitted); *see also Parks v. Winnfield Life Ins. Co.*, 336 So.2d 1021, 1029 (La. 3rd Cir. 1976)("Defendants also argue that a malicious prosecution action cannot be maintained against them after an indictment has been returned against the plaintiff. There is no merit in this argument. By raising the issue of the grand jury indictment, defendants are simply attempting to prove that there was probable cause to institute the proceedings. A grand jury indictment is not conclusive evidence of probable cause and any presumption which may arise as a result of it can be rebutted by proof that the indictment was obtained by false testimony or by proof that defendants failed to make a full and complete statement of the facts to the grand jury"); *Knapper v. Connick*, 668 So.2d 465, 468 (La. 4th Cir. 1996), *rev'd on other grounds*, ("Our courts have rejected a presumption of probable cause based upon indictment").

Due to the foregoing, the Court finds defendant has failed to convince the Court that, *as a*

15

*matter of law,* under Louisiana law, control over a federal, criminal prosecution vests solely and exclusively with the prosecutor once there is a return on indictment, and therefore a plaintiff who subsequently files a civil claim for malicious *continuation* of a prosecution (premised upon the post-indictment actions of law enforcement agents) has no cause of action, *as a matter of law*, against law enforcement agents for their post-indictment activities. Rather, the Court finds the question of whether or not "control" over the criminal prosecution in the underlying criminal case passed from the investigative agents *exclusively* to the federal prosecutor upon return of the grand jury indictment in this matter, will require factual findings addressing issues such as whether or not the investigative agents took an active role in the case post-indictment, whether or not the investigative agents took an active role in the case after learning there was no probable cause for believing plaintiff was guilty (if indeed the Court finds the investigative agents were aware probable cause was absent), whether or not investigative agents urged the prosecutor to move forward with the case in spite of knowing there was an absence of probable cause, etc. Moreover, as this case will be tried to the bench and this Court will serve as the fact-finder in this matter, there is little risk prejudice will result from the production of this discovery, for even if this Court finds (at the proper time and place) that "control" of the prosecution passed exclusively to the prosecutor upon return of the indictment, this Court will not be easily prejudiced, swayed or confused should irrelevant, post-indictment issues inadvertently come to the Court's attention. Accordingly, this Court's order requiring defendant to produce certain discovery (concerning matters or events post-dating the grand jury's return on indictment) is hereby REINSTATED, and defendant must produce the discovery within fifteen days of issuance of this Ruling. Additionally, due to the foregoing, this Court's previous order staying all discovery until after determination of the legal issue addressed herein is hereby LIFTED. [*See* Doc. 162, p.2]

Finally, counsel for defendant is, for the last time, cautioned to refrain from overreaching and/or bordering upon misleading the Court in its briefing. While the Court is of the opinion it clearly and explicitly instructed counsel of the foregoing at the hearing held in open court, for whatever reason, the government, it would seem, continued the conduct about which it had been cautioned. Accordingly, counsel is hereby placed ON NOTICE should this happen again, he will be required to show cause why he should not be SANCTIONED by the Court.

THUS DONE AND SIGNED this ___8___ day of February, 2010.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE